UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**FRANK W. BALLERO**                                      **CIVIL ACTION**

**VERSUS**                                                **NO. 16-16098**

**727 INC., ET AL.**                                      **SECTION "B"(3)**

**ORDER AND REASONS**

Before the Court are two motions: Defendants 727, Incorporated and 721 Bourbon, Inc.'s "Motion to Dismiss Amended Complaint" (Rec. Doc. 24) and Defendant Crescent Crown Distributing, LLC's "Motion to Dismiss" (Rec. Doc. 30). Plaintiff timely filed responses to both motions. Rec. Docs. 32-33. Defendants then requested, and were granted, leave to file reply memoranda. Rec. Docs. 36, 40. For the reasons discussed below,

**IT IS ORDERED** that the motions to dismiss (Rec. Docs. 24, 30) are **DENIED WITHOUT PREJUDICE.**

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

As previously discussed, this case arises out of the sale of a red ale beer known as Pirate's Blood. Rec. Doc. 1 at ¶ 5. Frank W. Ballero ("Plaintiff") claims that he invented and began brewing the beer in 2009. *Id.* He also developed a "logo and mark" for the beer. *Id.* The beer was subsequently sold by various bars, including the Funky Pirate located at 727 Bourbon Street, New Orleans,

1

Louisiana 70116 and owned by 727, Incorporated ("Defendant 727") and Tropical Isle Bourbon located at 721 Bourbon Street, New Orleans, Louisiana 70116 and owned by 721 Bourbon, Incorporated ("Defendant 721"). *Id.; see also* Rec. Doc. 8-1 at 1 n.1.

In March of 2011, Plaintiff stopped producing Pirate's Blood. Rec. Doc. 1 at ¶ 6. Yet, the Funky Pirate and Tropical Isle Bourbon continued to sell a beer called "Pirate's Blood," "use the same exact tap handle bearing [Plaintiff's] Pirate's Blood logo and name," and tell customers that the beer "is locally brewed and sold exclusively" at these two bars. *Id.*

According to Plaintiff, the beer "passing off as Pirate's Blood" is sold and distributed by Defendant Crescent Crown Distributing, LLC ("Defendant Crescent"). *Id.* at ¶ 7. Plaintiff maintains that Defendant Crescent regularly visits the Funky Pirate and Tropical Isle Bourbon "to maintain and clean the equipment associated with the product it has sold, i.e. the beer tap lines," and therefore is "complicit in the deception." *Id.*

Consequently, on November 4, 2016, Plaintiff filed suit requesting injunctive and monetary relief pursuant to § 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), 1116, 1117, and the Louisiana Unfair Trade Practices Act ("LUTPA"), Louisiana Revised Statute § 51:1401-1428.[1] Rec. Doc. 1 at ¶¶ 12, 15.

---

[1] Named as Defendants were 727, Crescent, Tropical Isle Beverages, LLC, and Tropical Isle's Original Papa Joe's, Inc. Rec. Doc. 1 at ¶ 2. In their original motion to dismiss, Defendants 727 and 721 explain that they are the owners of

2

In response to Defendants' original motions to dismiss (Rec. Docs. 8, 15), Plaintiff filed an amended complaint on February 2, 2017 asserting that he "met with various persons and companies in 2012, 2013, 2014, and 2015 regarding the production and sale of Pirate's Blood" and that he "fully intended/intends to continue brewing and selling Pirate's Blood under its trademarked name and logo" (Rec. Doc. 21). Before the Court could rule on the original motions to dismiss, Defendants 727 and 721 filed a second motion to dismiss in response to the amended complaint. Rec. Doc. 24. Nonetheless, Defendants' original motions were denied without prejudice on February 22, 2017. Rec. Doc. 29. The Court specifically stated that "Plaintiff's amended complaint appears to allege that he intended to continue to use and/or resume using his mark and therefore alleges that he did not abandon the mark. Arguments to the contrary will be considered in conjunction with the pending motion to dismiss filed by Defendants 721 and 727 . . . ." *Id.* at 6. Defendant Crescent then filed its second motion to dismiss. Rec. Doc. 30.

---

the bars at issue and that Tropical Isle Beverages, LLC and Tropical Isle's Original Papa Joe's, Inc. "have no relationship to the factual allegations in the Complaint." Rec. Doc. 8-1 at 1 n.1. Accordingly, those parties were terminated from the suit.

## II. THE PARTIES' CONTENTIONS

As they did in their original motions, Defendants 727 and 721 argue that "Plaintiff ceased using the 'Pirate's Blood' mark nearly six (6) years ago with no intent to resume use of the mark within the reasonably foreseeable future; and, therefore, abandoned the mark." Rec. Doc. 24 at 1. Because Plaintiff's claims for unfair competition under the LUTPA and for common law trademark infringement, false designation of origin, and unfair competition all require Plaintiff to own a protectable trademark, Defendants maintain that Plaintiff failed to state a claim upon which relief can be granted. Rec. Doc. 24-1 at 1-2. Defendant Crescent essentially adopts the arguments made by its co-Defendants. Rec. Doc. 30-1 at 1.[2]

Plaintiff responds that "he intended and continues to use the Pirate's Blood formula with its associated logo," as evidenced by his negotiations in 2012, 2013, 2014, and 2015 with individuals and businesses "regarding the contract brewing of Pirate's Blood." Rec. Doc. 33 at 4.

---

[2] Though, Defendant Crescent characterizes the timing of Plaintiff's abandonment a bit differently:  instead of arguing that Plaintiff abandoned the mark six years ago, it argues that he abandoned it five years prior to filing suit. Rec. Doc. 30-1 at 1.

### III. LAW AND ANALYSIS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party can move to dismiss a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Such motions are viewed with disfavor and rarely granted. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). Nonetheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, when reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

According to Defendants, to file a claim for federal and common law trademark infringement, false designation of origin, federal unfair competition, and unfair competition under the LUTPA, Plaintiff must have a valid protectable trademark. Rec. Doc. 24-1 at 3-4 (citing *Am. Rice, Inc. v. Producers Rice Mill,*

5

*Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) ("To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion. To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public") (internal citations omitted); *Action Ink, Inc. v. Anheuser-Busch, Inc.*, 959 F. Supp. 2d 934, 948 (E.D. La. 2013), *aff'd sub nom. Action Ink, Inc. v. N.Y. Jets, L.L.C.*, 576 F. App'x 321 (5th Cir. 2014)("A showing of likelihood of confusion presupposes the existence of a valid mark") (citing *La. World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1039-40 (5th Cir. 1984))).

> Yet, "[o]wnership of trademarks is established by use, not by registration." *Union Nat'l Bank of Tex., Laredo, Tex.* [*v. Union Nat'l Bank of Tex., Austin, Tex.*], 909 F.2d [839,] 842 [(5th Cir. 1990)]; *see also* 15 U.S.C. § 1127 (defining a trademark as a "word, name, symbol, or device ... <u>used</u> by a person, or which a person has a bona fide intention to <u>use in commerce</u>," and in turn defining "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark" (emphasis added)). And under the Lanham Act, even if a registrant has owned the mark at one time—indeed, even if the trademark registration has become inconstestable—an opposing party may successfully defend against an infringement claim by showing that the registrant has abandoned the mark. *See* 15 U.S.C. § 1115(b)(2). A mark is deemed abandoned if "its use has been discontinued with an intent not to resume such use." 15 U.S.C. § 1127.

*Action Ink*, 959 F. Supp. 2d at 942. Similarly, actions for false designation of origin under the Lanham Act or for unfair

6

competition under either the Lanham Act or the LUTPA may be defended against by demonstrating that the plaintiff abandoned his or her use of the mark. *Id.* at 948 (citing *Riggs Mktg. Inc. v. Mitchell*, 993 F. Supp. 1301, 1305 (D. Nev. 1997)); *see also* 15 U.S.C.A. § 1127 (in which the Lanham Act provides that a mark is abandoned when one of two things occurs: (1) "its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances." (2) The owner's course of conduct caused the mark to become the generic name for the goods or services or otherwise to lose its significance as a mark.).

"The party asserting abandonment must establish that the owner of the mark both (1) discontinued use of the mark and (2) intended not to resume its use." *Action Ink, Inc. v. N.Y. Jets, LLC*, No. 12-46, 2013 WL 12106878, at *3 (E.D. La. June 20, 2013), *adhered to on denial of reconsideration,* 2013 WL 5532781 (E.D. La. Oct. 4, 2013), *aff'd sub nom.* 576 F. App'x 321 (citation omitted) (granting summary judgment in favor of the defendants on claims of federal trademark infringement and false designation of origin under the Lanham Act, as well as for common law trademark infringement and unfair competition). Again, under the Lanham Act, "use" of a mark "means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C.A. § 1127; *see also Action Ink*, 2013 WL

12106878, at *4 (citing *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, No. 10-1333, 2012 WL 1118602, at *11 (E.D. La. Apr. 3, 2012)).

Further, under the Lanham Act, nonuse "for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C.A. § 1127. This creates a "rebuttable presumption of intent not to resume [use]." *Action Ink*, 2013 WL 12106878, at *4 (quoting *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1172 (11th Cir. 2002)). "Once the rebuttable presumption of intent not to resume has been established, the burden of production then '[s]hifts to [the holder] to produce evidence that [it] either used the mark during the statutory period or intended to resume use.'" *Id.* (quoting *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1330 (11th Cir. 2008)).[3]

However, "[t]he intent to resume cannot be far-flung or indefinite; rather there must be an intent to resume use within the reasonably foreseeable future." *Id.* (quoting *Nat. Answers*, 529 F.3d at 1330 (quoting *Silverman v. CBS Inc.*, 870 F.2d 40, 46 (2d Cir. 1989))) (quotation marks omitted). "Essentially, the trademark holder must come forward with objective, hard evidence of actual concrete plans to resume use in the reasonably

---

[3] Plaintiff misconstrues the law on this point, reading § 1127 to provide that it is Defendants' burden to show that the "owner of the mark discontinued use of the mark for a period of three years and further intended not to resume its use." Rec. Doc. 33 at 3-4; *see also* Rec. Doc. 32 at 4. The statute, however, merely provides that nonuse for three years is prima facie evidence of abandonment and thereby creates a presumption of abandonment.

8

foreseeable future when the conditions requiring suspension abate." *Id.* (quoting *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 268 (S.D.N.Y. 2002) (quoting *Silverman*, 870 F.2d at 46)). "Thus, 'a bare assertion of possible future use is not enough' to prove an intent to resume use." *Id.* (quoting *Silverman*, 870 F.2d at 47).

In *Action Ink*, after a fifteen-year period of nonuse, renewal of the mark and actions against alleged infringers, in light of the fact that there was no evidence that the holder used the mark in commerce or had plans to use the mark in commerce, were "minor activities" that were "inadequate to show an intent to resume use." 2013 WL 12106878, at *9-10. Further, the holder's declaration that there was never an intention to abandon the mark amounted to "self-serving testimony" that was insufficient to defeat summary judgment. *Id.* at *10.

Similarly, in *Silverman*, the Second Circuit determined that the holder's "actions in licensing the programs for limited use in connection with documentary and educational programs, challenging infringing uses brought to its attention, renewing its copyrights, and periodically reconsidering whether to resume use of the programs" were minor activities that did not amount to use. 870 F.2d at 47-48. "Such uses do not sufficiently rekindle the public's identification of the mark with the proprietor, which is the

essential condition for trademark protection, nor do they establish an intent to resume commercial use." *Id.* at 48.

In *Specht v. Google Incorporated*, the holder pointed to four activities that he believed showed his continued use of the mark after he supposedly ceased using it:  (1) he attempted to sell his business assets; (2) he did not cancel his phone service; (3) he continued operating his website; and (4) he conducted two sales efforts, including a mass mailing and a failed bid to license software. 747 F.3d 929, 934-35 (7th Cir. 2014). According to the Seventh Circuit, these activities did not amount to "use" because (1) "an effort to sell the assets of a business is different from trading on the goodwill of a trademark to sell a business's goods or services"; (2) his phone expenses for the year after he allegedly stopped using the mark were included in a balance sheet from the previous year "precisely because, in his view, [the company] did not operate in [the later year]"; (3) "he did not identify any goods or services [the company] could have provided through or in connection with the website after [his use allegedly ceased]"; and (4) his sales efforts "were isolated and not sustained; sporadic attempts to solicit business are not a 'use in commerce' meriting the protection of the Lanham Act." *Id.* (citations omitted). The plaintiff's argument that the mass mailing evidenced an intent to resume use failed because, by that time, the defendant had publicized its use of the mark; in other

10

words, by the time of the mass mailing, the mark was permanently abandoned. *Id.* at 935-36.

In his original complaint, Plaintiff admits that he "ceased production of Pirate's Blood in March of 2011." Rec. Doc. 1 at ¶ 6. However, Plaintiff's amended complaint adds a paragraph, which provides that Plaintiff "met with various persons and companies in 2012, 2013, 2014, and 2015 regarding the production and sale of Pirate's Blood. [Plaintiff] fully intended/intends to continue brewing and selling Pirate's Blood under its trademarked name and logo." Rec. Doc. 21 at ¶ 6(A).[4]

Defendants argue that Plaintiff admitted in his complaint that he stopped using the "Pirate's Blood" mark in 2011. Rec. Doc. 24-1 at 5; *see also* Rec. Doc. 30-1 at 5. Further, they assert that Plaintiff's amended complaint fails to show that Plaintiff intended to resume use of the mark. Rec. Doc. 24-1 at 6; Rec. Doc. 30-1 at 5. Specifically, Defendants maintain that meetings with companies about the production and sale of Pirate's Blood were minor activities that did not amount to "use" and that Plaintiff's allegation that he intends to continue brewing and selling Pirate's

---

[4] The Court is aware of the arguments made by Defendants 727 and 721 in their reply memorandum—namely that "Plaintiff improperly embellishes the facts that were alleged in his original . . . and amended complaint . . . ." Rec. Doc. 40 at 1. The Court will consider the statements actually made in Plaintiff's original and amended complaints, rather than Plaintiff's characterization of those statements in his opposition memoranda.

11

Blood is merely a vague assertion of possible future use. Rec. Doc. 24-1 at 6-7; Rec. Doc. 30-1 at 5.

Plaintiff essentially responds that its amended complaint is sufficient under Federal Rules of Civil Procedure 8 and 12(b)(6) and that "Defendants offer no case where a Court found abandonment at the 12(b)(6) stage." Rec. Doc. 33 at 4.

However, Defendant Crescent cited a recent district court case from Massachusetts in which the court granted a motion to dismiss due to abandonment of a trademark. Rec. Doc. 30-1 at 7 (citing *Beram v. Ceaco, Inc.*, No. 16-10569, 2016 WL 7030427, at *4 (D. Mass. Dec. 1, 2016). Plus, Defendants' reply memoranda point the Court to a second, similar Massachusetts case. Rec. Docs. 36 at 2, 40 at n.1 (citing *Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 102 (D. Mass. 1999)).[5]

In *Beram*, the holder invented puzzles and entered into a contract with a company that allowed the company to license the puzzles for manufacture and sale. 2016 WL 7030427, at *1. One of the puzzle designs was labeled "Puzzle Stix." *Id.* During the contract period, the company purportedly sold a product called "Puzzlestix" that it attributed to a different inventor. *Id.* at *2. Because the complaint did not allege any recent use of the "Puzzle Stix" name by the holder or by the company, the holder was

---

[5] Nonetheless, Defendants were unable to cite, and this Court was unable to find after a brief review, any case from within the Fifth Circuit in which a motion to dismiss was granted because the holder of the mark abandoned it.

12

told by the company that sales of her puzzles had ended, and the complaint failed to allege any intention of the holder's estate to use the name in the reasonably foreseeable future, the holder's claims of trademark infringement were dismissed without prejudice. *Id.* at *4.

In *Swartz*, the holder's complaint merely alleged that he used the mark in 1975 (twenty-four years earlier), that he "does now, and has in the past, been working toward, and has sold, a product that uses the 'marks' at issue," and that he "had a product on the market and plans to continue." 53 F. Supp. 2d at 101. Because he failed to allege any "*current*" use of the mark, the court determined that even if he once held a protectable trademark, it was lost through abandonment. *Id.* at 101-02 (citation omitted).

At this stage, Plaintiff's complaint is sufficiently distinguishable from the cases cited by Defendants to warrant denying Defendants' motions to dismiss. In *Action Ink*, the holder merely renewed the mark, filed suit against infringers, and alleged that there was no intent to abandon (2013 WL 12106878, at *9-10); in *Silverman*, the holder renewed the copyright, sued infringers, considered resuming use, and licensed the programs to be used in educational programs (870 F.2d at 47-48); and in *Specht*, the holder tried to sell his business and maintained his phone service and website (747 F.3d at 934-35). None of these activities was considered commercial in nature. The holders were not trying to

13

sell the good or service associated with the mark. Plus, in *Beram* and *Swartz*, the holders failed to allege <u>any</u> recent use or intent to use. 2016 WL 7030427, at *4; 53 F. Supp. 2d at 101-02.

Here, however, Plaintiff's amended complaint at least alleges that he met with individuals and companies over the course of several years "regarding the production and sale of Pirate's Blood." Rec. Doc. 21. While the Court agrees with Defendants that this is a vague allegation that may not survive a subsequent motion for summary judgment, it allows the Court "to draw the reasonable inference that the defendant[s] [are] liable . . . ." *See Iqbal*, 556 U.S. at 678.[6] Further, while the Seventh Circuit in *Specht* recognized that the holder's two sales attempts "were isolated and not sustained" and therefore not entitled to protection (747 F.3d at 935-36), Plaintiff's case is distinguishable because he alleges meetings from 2012 through 2015 (Rec. Doc. 21). He, of course, does not provide the exact number of meetings, the parties involved, or the nature of their conversations. Thus, again, after discovery is exchanged, it may be revealed that Plaintiff's attempts were just as sporadic as the holder's attempts in *Specht*. At the motion to dismiss stage, however, the facts alleged in the

---

[6] The Court specifically notes that Defendants are correct that the statement in the amended complaint does not provide that Plaintiff "underwent negotiations" with individuals and businesses (*see* Rec. Docs. 40 at 2, 21 at 1); however, a statement that the holder "met" with individuals and businesses "regarding the production and sale" of the product allows the Court to draw the reasonable inference that Plaintiff engaged in commercial activity.

14

complaint must be viewed in the light most favorable to Plaintiff. *See Baker*, 75 F.3d at 196.

## IV. CONCLUSION

For the reasons outlined above,

**IT IS ORDERED** that Defendants' motions to dismiss (Rec. Docs. 24, 30) are **DENIED WITHOUT PREJUDICE** to re-urge on a motion, or motions, for summary judgment after the exchange of discovery.

New Orleans, Louisiana, this 28th day of March, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE